UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEOM SU LEE,<br><br>                          **Plaintiff,**<br><br>v.<br><br>ROKU KARAOKE, NAGASOO KARAOKE, RODEO KARAOKE, ENCORE KARAOKE, SF KARAOKE, SING OUT, K-POP KARAOKE, DAE BAK KARAOKE, BOSS KARAOKE, VOLUME UP KARAOKE, FORT LEE ZILLER KARAOKE, CROWN KARAOKE, ASSA KARAOKE, SOO KARAOKE, and TIME KARAOKE,<br><br>                         **Defendants.** | No. 18-cv-8633-KM-SCM<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

*Pro se* plaintiff Beom Su Lee brings this action against defendants, various karaoke bars and clubs, for copyright infringement. Lee claims to be the assignee of a copyright that covers his father's musical works under the title "The Collection of Lee, Jae Ho's Musical Compositions." In April of 2018, Lee visited the defendants' bars and clubs and discovered that 42 of his copyrighted works had been programmed into the defendants' karaoke machines and listed in their songbooks.

Lee filed an amended complaint on September 20, 2018 against fourteen defendants. Of these fourteen defendants, ten have filed a joint motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(7), or alternatively, for a more definite statement under Rule 12(e). (DE 25).

For the foregoing reasons, the defendants' motion to dismiss is denied.

## I. Factual Allegations[1]

Lee originally filed this action on April 30, 2018. (DE 1). He filed an amended complaint on September 20, 2018 against the following defendants: Roku Karaoke; Nagasoo Karaoke; Encore Karaoke; Rodeo Karaoke; Sf Karaoke; Assa Karaoke; Daebak Karaoke; Sing Out Karaoke; Soo Karaoke; Fort Lee Ziller Karaoke; Crown Karaoke; Boss Karaoke; K-Pop Karaoke; and Volume Up Karaoke. (AC ¶5). Of these fourteen defendants, ten have moved to dismiss the complaint.[2]

Lee, the fourth son of Jae Ho Lee ("Jae Ho"), holds the copyright to his father's musical works, reflected in U.S. Copyright Certificate TX5-432-807. (AC ¶6). Upon the death of Jae Ho in 1960, the worldwide copyright was inherited by Lee's mother, Jung Sun Kim, who transferred the copyright to her

---

[1] As required at this stage, the Court accepts the factual allegations in the complaint as true. For ease of reference, certain items from the record will be abbreviated throughout this Opinion as follows:

DE = Docket entry number in this case;

AC = Amended Complaint (DE 24);

DBr = Defendants' motion to dismiss the complaint (DE 25);

PBr = Plaintiff's opposition brief (DE 26);

Reply = Defendants' reply brief (DE 29).

[2] The ten movants are the following: Tyan Grand, Inc., improperly pled as Roku Karaoke; Voice King, improperly pled as Nagasoo Karaoke; Rodeo Restaurant K-Pop, improperly pled as Rodeo Karaoke; SH Direct, LLC, improperly pled as Encore Karaoke; Sing Out Inc., improperly pled as Sing Out Karaoke; TH Entertainment Group Inc., improperly pled as Soo Karaoke; Evergreen Diner, Inc. improperly pled as Crown Karaoke; C&C Chocolate Entertainment Corp., improperly pled as Boss Karaoke; K-Pop Corp., improperly pled as K-Pop Karaoke; and HJJ Music, improperly pled as Volume Up Karaoke (hereinafter "moving defendants"). (DE 18).

Two of the remaining defendants have been served but have not answered or otherwise moved to dismiss the complaint (Fort Lee Ziller Karaoke and Dae bak Karaoke). There is no evidence that "Assa Karaoke" has been served. SF Karaoke was apparently improperly identified in the original complaint. Lee has since amended his complaint to name "Time Karaoke" as the proper defendant. (DE 20). However, Time Karaoke has not been served.

2

eldest son, Beom Seung Lee ("Seung"), Lee's brother. (AC ¶8; DE 3-1, Ex. 3[3]). In 1999, Lee registered 125 of Jae Ho's musical works under the title "The Collection of Lee, Jae Ho's Musical Compositions." (AC ¶7). On August 1, 2001, Seung assigned Lee the copyrights of Jae Ho's musical works for all areas except Korea and Japan. (DE 3-1, Ex. 3). Lee received the copyright certificate in 2001. (AC ¶7). In another suit that Lee brought in the Central District of California, that Court determined on summary judgment that his copyright was "valid." (AC ¶9).

Between April 6 and 18, 2018, Lee visited New York and New Jersey, and "investigate[d]" defendants' karaoke bars. (AC ¶10). Defendants' bars use karaoke machines from either TJ Media Karaoke or Kumyoung Karaoke. (AC ¶10). Lee discovered that 42 of Jae Ho's musical works had been programmed into the TJ Media Karaoke machines. (AC ¶¶10-11; DE 3-1, Ex. 5 (list of the 42 works in the TJ Media Karaoke machine and songbook)).

Lee alleges that he went to defendants' establishments and obtained video evidence of the playing of "each [of] Jae Ho Lee's Musical Works." (AC ¶10). Lee paid to enter the defendants' karaoke rooms, which were equipped with karaoke machines, a songbook, and a "big screen." (AC ¶¶10, 12). He took pictures of the rooms, the songbooks, and the screens while various melodies [he implies that these were the copyrighted works] were playing. (AC ¶10; DE 25-5). Lee did not obtain video evidence from all defendants because of cost. (AC ¶14).[4] Lee's amended complaint alleges that defendants do not have a license or authorization to use or perform the copyrighted works. (AC ¶17).

---

[3]  The amended complaint contains citations to "exhibits." Those exhibits have been separately filed under docket entry number 3.

[4]  The moving defendants clarify that the videos attached to the complaint contain images and videos from Tyan Grand, Inc.; Voice King; Rodeo Restaurant K-Pop; SH Karaoke; TH Entertainment Group, Inc.; and Sing Out Inc. (DE 25-2, ¶12). The videos and photographs, therefore, do not contain any evidence related to Evergreen Diner, Inc.; C&C Chocolate entertainment Corp.; K-Pop Corp.; and HJJ Music. (DBr at 6 n.4).

3

## II. Standard

### A. Rule 12(b)(6)

In considering a motion to dismiss a *pro se* complaint, a court must bear in mind that *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice . . . . keeping in mind that *pro se* complaints in particular should be construed liberally." (citations omitted)). This does not, however, absolve a *pro se* plaintiff of the need to adhere to the Federal Rules of Civil Procedure. *See, e.g., Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) ("a *pro se* complaint . . . must be held to 'less stringent standards than formal pleadings drafted by lawyers;' . . . but we nonetheless review the pleading to ensure that it has 'sufficient factual matter; accepted as true; to state a claim to relief that is plausible on [its] face.'").

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

4

(citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). Moreover, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Bush v. City of Phila.*, 367 F. Supp. 2d 722, 725-26 (E.D. Pa. 2005) (quoting *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004)).

Under this standard, the Court must disregard the declarations from the moving defendants' attorney (DE 25-2, 30). First, the Court will not consider external evidence that is not integral or relied upon in the complaint on a motion to dismiss. Second, the attorney's declarations largely contain legal arguments and interpretation of the allegations which are inappropriate at this stage. *See* L. Civ. R. 7.2(a). On a motion to dismiss, the Court is concerned only with the sufficiency of the allegations, not the strength of plaintiff's case.

### B. Pleading Copyright Infringement

As a threshold issue, the moving defendants urge this Court to follow *Gee v. CBS, Inc.*, 471 F. Supp. 600 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979), and impose a heightened standard of specific pleading standard for a copyright infringement claim. (DBr at 5). I decline to do so; the *Gee* holding, I believe, has been subsumed by the subsequent Supreme Court authority of *Twombly* and *Iqbal. See* Section II.A, *supra*.

The Copyright Act of 1976 provides that the owner of copyright has the exclusive rights "to do" and "to authorize" any of the following:

> (1) to reproduce the copyrighted work;
>
> . . .
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner, that is, anyone who trespasses into his exclusive domain by using or authorizing the use of the copyrighted work . . . is an infringer of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S. Ct. 774, 78 L. Ed. 2d 574 (1984) (quotation and citation omitted).

A claim for copyright infringement involves two "essential elements: ownership of copyright, and copying by the defendant." *Dam Things from Denmark, a/k/a Troll Company ApS v. Russ Berrie & Company, Inc.*, 290 F.3d 548, 561 (3d Cir. 2002) (citing *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986)); *see also Winstead v. Jackson*, 509 Fed. App'x 139, 143 (3d Cir. 2013) (stating that "[t]o establish a claim of copyright

infringement, the plaintiff must establish ownership of a valid copyright, and unauthorized copying of protectable elements of the plaintiff's work.").

For the first element, a certificate of registration with the copyright office constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," including those pertaining to ownership. *See Granger v. ACME Abstract Co.*, 900 F. Supp. 2d 419, 422 (D.N.J. 2012). The second element "contemplates use of the plaintiff's work in a way that interferes with any of a copyright owner's rights under 17 U.S.C. § 106." *John Wiley & Sons, Inc. v. Golden*, 2015 U.S. Dist. LEXIS 19558, at *21 (D.N.J. Feb. 19, 2015) (internal quotation and citation omitted).

The heightened pleading standard advanced by the moving defendants was announced by the Eastern District of Pennsylvania in *Gee*, which predates *Twombly* and *Iqbal*. Under *Gee*, for a plaintiff to properly plead a copyright infringement claim, a plaintiff must include allegations describing "which specific original work is the subject of the copyright claim, that plaintiff owns the copyright, that the work in question has been registered in compliance with the statute and by what acts and during what time defendant has infringed the copyright." *Id.* at 64 (citing 2a Moore's Federal Practice and Procedure 8.17(7) at 1767 (2d ed. 1978)). "Plaintiffs must also allege that each work is suitably registered, provide registration numbers." *Id.* at 644. Some district courts have embraced this more detailed pleading standard. *See John Wiley & Sons, Inc.*, 2015 U.S. Dist. LEXIS 19558, at *22 (collecting cases).

However, the pleading standard in *Gee* "has not been embraced by any Third Circuit panel (other than the one that affirmed without opinion that court's disposition)." *Id.* (citing *Bradshaw v. Am. Inst. for History Educ.*, 2013 WL 1007219, *4 n.4 (D.N.J. March 13, 2013) (quotation omitted)); *see also Fish Kiss LLC v. N. Star Creations, LLC*, 2018 U.S. Dist. LEXIS 136147, at *18 (D.N.J. Aug. 13, 2018) ("[T]he Third Circuit no longer applies the *Gee* standard for adequately pleading a claim of copyright infringement, after its underpinnings have been substantially weakened." (citing *Richard Feiner & Co.*,

*Inc. v. Larry Harmon Pictures Corp.*, 38 F. Supp. 2d 276 (S.D.N.Y. 1999) (noting that *Gee* "relies heavily on a section from Moore's Federal Practice, Second Edition, that has been deleted in the more recent edition.")).

Accordingly, "courts in this district have routinely allowed copyright infringement claims to proceed upon a plaintiff's allegations of the two essential elements of ownership and copying, without seeming to require more." *See John Wiley & Sons, Inc.*, 2015 U.S. Dist. LEXIS 19558, at *22 (listing cases).

The Court follows these decisions, and "declines to engraft a *Gee* analysis." *Id.* at 22-23. A plaintiff alleging copyright infringement states a claim if the facts pleaded establish ownership and unauthorized use. *Fish Kiss LLC*, 2018 U.S. Dist. LEXIS 136147, at *19 (citing *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 135 (3d Cir. 2014)). It is this Court's view that such allegations are in accord with the requirements of *Twombly* and *Iqbal*.

### III. Discussion

I note at the outset that Lee has brought at least two other copyright infringement lawsuits, in the Southern and Eastern Districts of New York, that allege the same operative facts, but against different karaoke defendants. *See Beom Su Lee v. Flower Karaoke*, 2019 U.S. Dist. LEXIS 64133 (E.D.N.Y. Apr. 15, 2019); *Beom Su Lee v. Karaoke City*, 2019 U.S. Dist. LEXIS 68883 (S.D.N.Y. Apr. 22, 2019). The defendants in both of those cases, represented by counsel for defendants here, made substantially similar arguments in support of their motions to dismiss, which were denied.

This is not to say that the moving defendants' arguments are without merit. Such arguments, however, are more properly resolved on a full factual record.

First, the moving defendants argue that Lee has not adequately alleged ownership over a valid copyright because Lee does not (1) provide a full chain of ownership; (2) provide a valid assignment that is properly authenticated; or (3) name all owners of the copyright.

Second, the moving defendants raise an array of factual defenses: that the complaint fails to specify wrongdoing as to each defendant but impermissibly accuses them as a group; that Lee has insufficiently pled public performance, but instead rests his allegations on the fact that "he, as the alleged copyright owner, publicly performed the work"; and that the complaint does not contain allegations that "definitely exclude the work from the public domain."

Third, the moving defendants raise the affirmative legal defense of fair use.

### A. Validity of Copyright

The moving defendants' validity arguments are properly addressed under the first element of an infringement claim, ownership of a copyright.

Despite the procedural posture of this case, the moving defendants contend that Lee has "fail[ed] to produce admissible evidence providing chain of title" to establish copyright ownership. (Dbr at 9). True, the first step in establishing a claim of copyright infringement requires the plaintiff to show ownership of the copyright in question. *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, 2008 U.S. Dist. LEXIS 56871, at *94 (D.N.J. July 28, 2008). The plaintiff must show the registration of the copyright and evidence of a chain of title from the original copyright registrant to the plaintiff to establish prima facie ownership. At the complaint stage, however, this must be sufficiently alleged, not proven by "admissible evidence."

The Copyright Act provides that copyright ownership "vests initially in the authority or authors of the work," 17 U.S.C. § 201(a), and that ownership "may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(d). "A transfer of copyright ownership, . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204 (a). "Where the plaintiff is not the author of the copyrighted work he or she must establish a proprietary right through the chain of title in order to support a valid claim to the copyright."

*Hung Tang v. Ho Yong Hwang*, 799 F. Supp. 499, 503 (E.D. Pa. 1992) (citation omitted). When the transfer is executed "in a foreign country," a certificate of acknowledgement that "is issued by a diplomatic or consular officer of the United States" constitutes "prima facie evidence of the execution of the transfer." 17 U.S.C. §204(b)(2).

The registration certificate creates a presumption of satisfaction of the statutory formalities. In particular, a presumption that the copyright is valid arises where a plaintiff has produced a valid copyright certificate which was obtained within five years of the date when the work was first published. 17 U.S.C. § 410(c) ("The certificate of registration made before or within five years after the first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court.").

"A certificate of registration satisfies the [registration requirement], regardless of whether the certificate contains any inaccurate information," unless (1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

This presumption of validity is rebuttable, and the burden shifts to the defendant to prove that the plaintiff's copyrights are invalid. *See Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 23 (E.D. Pa. 1992). Moreover, the failure to obtain a registration within five years does not render a copyright invalid. Rather, the plaintiff in that situation is simply not entitled to a presumption of validity. *See id.*

Even in the case where a registration certificate is dated more than five years after the date of first publication, the court may exercise its discretion under § 410(c) and "give it the weight of prima facie evidence." *Id.* In other words, § 410 "deals with the allocation of the burden of proof in a copyright

10

infringement claim. It does not render a copyright invalid because a party failed to register its copyrightable material within five years." *Id.*

Lee has alleged that he is the copyright owner of the musical works in the United States. Lee has attached a copy of the Certificate of Registration from the United States Copyright office for 125 of Jae Ho's musical works. The registration states that the collection was published in 1996, and August 6, 2001 is the effective date of registration. (DE 3-1).[5]

Because the registration suggests that the registration was obtained within five years after the first publication of the work, Lee would be entitled to a presumption of validity (and if not, might be able to prove it by other means, as outlined above). Lee has buttressed his claim of validity by reference to another district court's holding on summary judgment that the copyright was valid. (AC ¶9).

The moving defendants, essentially ignoring the standard on a motion to dismiss, attempt to controvert these allegations with factual contentions of their own. They argue that the first date of publication is 1959, and that the complaint is somehow "inconsistent" because it alleges that the musical works were composed between 1937 and 1960, but not published until 1996. (DBr at 2; DBr at 15-16).

The Court will not interpret the complaint in the light most favorable to the moving defendants at this stage; indeed I am required to do the opposite. The moving defendants' unsubstantiated arguments that the works were published sometime before 1996 is plainly insufficient to require that their motion be granted at this early stage. The complaint and the registration plausibly allege a publication date of October 10, 1996 publication date. (DE 3-1, at 1). That allegation is sufficient under the standards set forth above.[6]

---

[5] Under 17 U.S.C. § 401(d), the "effective date of a copyright registration is the day on which an application, deposit, and fee . . . have all been received in the Copyright Office."

[6] The moving defendants raise a related argument based on their contention that the works were published sometime before 1996. (DBr at 15-16). The works, they say,

11

The moving defendants also contend that Lee "has failed to provide sufficient evidence of a proper assignment," suggesting that the assignment is not properly authenticated. (DBr at 2, 10). Again, Lee is not required to present admissible evidence at this stage (although he certainly has taken steps in that direction). Lee alleges that he was assigned exclusive ownership of the copyrights from Seung in August of 2001. That is a sufficient factual allegation that he received the copyright through a valid transfer and was the copyright owner at the time of the alleged infringement in 2018. *See* 17 U.S.C. § 201(d).

The moving defendants challenge the authenticity of the assignment, contending that "there is no proof that the transfer contains a certificate issued by a diplomatic or consular officer of the United States," and that the assignment, translated from Korean "is not properly signed or notarized." (DBr at 10). The translated assignment indicates that it is signed (DE 3-1, Ex. 3 at 13[7]), and the Korean version at least appears on its face to contain the actual

---

must be in the public domain because they were created in 1959 and there is "no explanation for the delay between the date of creation, date of publication and the registration of the copyright." (DBr at 16). The moving defendants suggest that because the works were created before 1978, the Copyright Act of 1909 applies, rendering Lee's copyright invalid. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 632-33 (2d Cir. 2004) ("Under the 1909 Act, applicable to works created before January 1, 1978, . . . state common law copyright provided protection until first publication, and thereafter the work was entitled to an initial 28-year term of statutory copyright, provided that adequate statutory notice was given at publication, or appropriate registration and deposit were made."). Without adequate statutory notice at publication, the work "was injected into the public domain." *Id.* at 633.

As noted above, the complaint and registration allege a 1996 publication date, making the Copyright Act of 1976 applicable. *See Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *16 ("Under the 1976 version of the Act . . . for works created before 1978, but published on or before December 31, 2002, the term of copyright shall not expire before December 31, 2047." (citation omitted)). Thus, assuming the allegations in the complaint are true, "that the works were created before 1978, but published in 1996, the works at issue are not in the public domain and Defendants are not entitled to dismissal on that basis." *Id.* Perhaps the defendants may someday prove otherwise; that possibility is irrelevant to the current motion.

[7] The exhibits to the complaint were uploaded in a single document in docket entry number 3-1. This number refers to the automatically generated ECF number located on the top right-hand corner of the page.

signatures. (DE 3-1, Ex. 3 at 14). Proofs to the contrary are not properly considered at this stage.

Moreover, a certificate of acknowledgement issued by a diplomatic or consular officer of the United States is not a *sine qua non;* it is simply prima facie evidence of execution of the transfer. "This is not to say that an assignment or transfer unaccompanied by a certificate of acknowledgment is not entitled to prima facie weight." *Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 194 F. Supp. 2d 30, 41 n.8 (D.P.R. 2001) (citing *Design v. Lauren Knitwear Corp.*, 782 F. Supp. 824, 829 (S.D.N.Y. 1991) ("a notarial or consular acknowledgement is not essential to the validity of any transfer, whether executed in the United States of abroad")). Any challenges to authenticity may be explored in discovery.[8]

To the extent the moving defendants argue that the copyright registration is not valid because Lee submitted the registration before receiving the assignment or failed to deposit certain required documents with the registration, they are again jumping the gun. These are issues of fact to be explored in discovery. *See Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *10 ("To the extent Defendants raise arguments regarding the validity of the assignment based on . . . the alleged date of transfer post-dating the registration date . . . those arguments raise questions of facts which are not properly considered at the motion to dismiss stage."). (DBr at 13). Any evidence of what has been deposited with the copyright office must await development in discovery and be presented in due course. (DBr at 14).

---

[8] The moving defendants also argue that "[s]ince the assignment is invalid, Plaintiff must join all co-owners of the work in this matter." (DBr at 10-13). Even assuming that such a requirement exists, it is not operative because I have already concluded that the assignment cannot be regarded as invalid at this stage. *See Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *11 (S.D.N.Y. Apr. 22, 2019) ("Defendants' unsupported allegations do not entitle them to dismissal of Plaintiff's claims. Further, '[t]he right to prosecute an accrued cause of action for infringement is . . . an incident of copyright ownership' and 'may be exercised independently of co-owners.'" (citation omitted)); *see also Copyright.net Music Publ'g LLC v. MP3.com*, 256 F. Supp. 2d 214, 218 (S.D.N.Y. 2003) ("[T]here was simply no legal basis for requiring plaintiffs to join all co-owners of the compositions at issue.").

It is worth noting, by the way, that the cases relied upon by the moving defendants were decided on a full factual record either at the summary judgment stage, by a jury, or post-trial. (DBr at 14 (citing *Coles v. Wonder*, 283 F. 3d 798, 801 (6th Cir. 2002) (summary judgment); *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (summary judgment); *Torres-Negron v. J & N Records, LLC*, 504 F.3d 1 51, 160 (1st Cir. 2007) (judgment notwithstanding the verdict); *Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) (summary judgment); *Midway Mfg. Co. v. Bandai-America, Inc.*, 546 F. Supp. 125, 142-43 (D.N.J. 1982) (summary judgment); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989) (summary judgment); *Mon Cheri Bridals, Inc. v. Wen Wu*, 383 F. App'x 228, 231 (3d Cir. 2010) (jury verdict)). They do not suggest that dismissal of a complaint is appropriate.

In sum, I conclude that the complaint sufficiently sets forth that Lee received the copyright through a valid transfer and was the copyright owner during the alleged infringement.

### B. Public Performance[9]

The moving defendants argue that the complaint should be dismissed because Lee has failed to set forth facts establishing (1) performance (2) in a public venue. In defendants' view the complaint fails to allege that they "actually violated copyright law by having a public performance of protected work." (DBr at 16). The karaoke rooms, they say, are private rooms, akin to hotel rooms. (DBr at 17 (citing *Columbia Pictures Indus. v. Prof'l Real Estate Inv'rs, Inc.*, 866 F.2d 278, 279 (9th Cir. 1989) (affirming summary judgment in

---

[9] Lee's complaint alleges infringement based on performance and synchronization. (AC ¶¶15, 17); *see Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 920 (2d Cir. 1984) ("the so-called synchronization right, or 'synch' right . . . [is] the right to reproduce the music onto the soundtrack of a film or a videotape in synchronization with the action. The 'synch' right is a form of the reproduction right also created by statute as one of the exclusive rights enjoyed by the copyright owner."); *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 529 (9th Cir. 2008) (holding that karaoke device manufacturer was required to obtain synchronization license). The moving defendants' motion only addresses public performance. I confine my analysis to that aspect, and do not independently address synchronization.

14

favor of hotel operators because operators' practice of renting movies to their guests did not result in "public performance" of copyrighted material)).

Again, the moving defendants would have the Court prematurely decide the merits of the case. "To 'perform' a work means to recite . . . either directly or by means of any device or process." *Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *12 (quoting 17 U.S.C. § 101). "To perform a work 'publicly'" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
>
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101. These definitions are rife with factual questions inappropriate for resolution on a motion to dismiss. The complaint's allegations, assumed at this stage to be true, are far from being inadequate as a matter of law.

Karaoke bars, for example, have been held to be public venues. "[D]espite the fact that there are private rooms within the karaoke venues, the karaoke bars and clubs themselves are open to the public and, thus, are 'public' places." *Karaoke City*, No. 2019 U.S. Dist. LEXIS 68883, at *13 (citing *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 158 (3d Cir. 1984) (videos played in private booths at video store were public performances because activity occurred in the store, which was open to the public); *Elohim EPF USA, Inc. v. Aceplus, Inc.*, 2015 WL 13753299, at *5 (C.D. Cal. Jan. 2, 2015) (allegations that defendants publicly had enabled others to publicly perform plaintiff's copyrighted works in karaoke bars' private rooms, by providing machines and sound systems sufficient to show infringement of plaintiffs' exclusive right of public performance); *Lee v. eBay*, 2018 WL 1941974, at *4 (C.D. Cal. Feb. 8, 2018) ("[T]he 'public' element of a 'public

15

performance' is satisfied, even if the customers may sing karaoke somewhat privately.")).

Furthermore, "the offer to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, can violate a copyright." *Flower Karaoke*, 2019 U.S. Dist. LEXIS 64133, at *9. That court pungently and accurately observed that if the copyrighted "songs were in their karaoke books, they weren't there to take up space. They were there as an offer for customers to play the songs in defendants' karaoke rooms." *Id.* (quoting *Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 245 (S.D.N.Y. March 31, 2008)).

The moving defendants' arguments would require me to draw inferences in their favor, when the governing standard requires that I draw them in favor of the plaintiff. The complaint plausibly alleges that the defendants have violated Lee's exclusive right to public performance of the musical compositions by making the copyrighted works available for public performance.

### C. Fair Use

Finally, the moving defendants raise the affirmative defense of fair use. (DBr at 18-21). The moving defendants suggest that "the transitory display of lyrics is nothing more than a tool for allowing enjoyment of the licensed recording." The subtitled lyrics on the screen, they say, "can be used as teaching aids for those who wish to improve on their voice and as parodies for those who wish to mock the song." (DBr at 20 (citing *MCA, Inc. v. Wilson*, 677 F.2d 180, 181 (2d Cir. 1981) (determining applicability of fair use after bench trial)). Perhaps. But once again, the defendants have posited inferences favorable to themselves, instead of honoring the applicable standard on a motion to dismiss.

The Copyright Act does not grant a copyright holder exclusive rights to reproduce his or her work under all circumstances. *Sony Corp. of Am.*, 464 U.S. at 432-33. Section 107 of the Copyright Act explains that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright." 17

U.S.C. § 107. In determining whether the use of a copyrighted work is fair, courts consider:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.* When conducting a fair use analysis, courts are not restricted to these factors. The analysis is flexible and performed on a case-by-case basis. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994) (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)).

"Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc.*, 471 U.S. at 560. "Fair use is an affirmative defense to a copyright infringement claim, and the proponent carries the burden of proof in demonstrating fair use." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 569 (D.N.J. 2002) (citation omitted). "[T]he applicability of the fair use defense in the context of a motion to dismiss is questionable." *Id.*; see also *Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *17 ("Due to the fact-sensitive nature of the inquiry, courts generally do not address the fair use defense until the summary judgment phase." (citation omitted)).

The moving defendants simply posit that individuals partake in karaoke "to improve their voice" and to engage in parodies. A performance for public entertainment has been plausibly alleged; the court cannot simply assume an educational or satirical use of the material. The pertinent facts and considerations that might support a claim of fair use are not apparent from the

face of the complaint. Accordingly, the moving defendants' motion based on the affirmative defense of fair use is denied.[10]

### D. More Definite Statement

I finally address the moving defendants' motion for a more definite statement. (DBr at 22-23). The moving defendants request a more definitive statement as to the following issues:

> 1) The full chain of ownership of the Collection of Lee, Jae Ho's Composition and the current ownership of any such rights even if outside the country;
> 2) Details regarding the alleged assignment and its authentication;
> 3) Factual details regarding the publication of the works at issue in this case in the United States and outside the United States;
> 4) Factual details specific to each Defendant regarding the alleged copyright infringement and the alleged public performance of the work;
> 5) Factual details regarding any alleged public performance of the work and any copyright registration outside the United States.

---

[10] The moving defendants also argue that Lee has failed to plead that the alleged copyright infringement was "willful," as required under 17 U.S.C. § 504 for enhanced statutory damages. (DBr at 21-22). The moving defendants contend that Lee has not suggested that defendants had "notice" that the materials were copyrighted or that Lee "ever sent a cease and desist letter." (DBr at 22).

In determining whether to award statutory damages, the following is considered: "(1) the state of mind of the defendant . . . that is, whether the defendant was acting willfully, knowingly or innocently; (2) the need to deter future infringing activity; (3) the profits reaped by the defendants in connection with the infringement; and (4) the revenue lost by the plaintiff as a result of said infringement." *Yash Raj Films (USA) Inc. v. Sur Sangeet Video Elecs. Inc.*, 2008 U.S. Dist. LEXIS 14951, at *11-12 (D.N.J. Feb. 28, 2008) (citation omitted). "A finding of willfulness is justified if the infringer has knowledge that his conduct is infringing another's copyright or if the infringer has acted in reckless disregard of the copyright owner's rights." *Id.* (citation omitted). Whether infringement was willful "or not (and thus the setting of the range in which the fact-finder's damages award may fall) is usually, like fair use, a mixed question of fact and law." *Fitzgerald v. CBS Broad., Inc.*, 491 F. Supp. 2d 177, 190 (D. Mass. 2007) (denying summary judgment on willfulness "[a]s there remain material issues of fact as to defendant's state of mind during infringement.").

Lee has alleged that his father's works were widely known and "extremely popular" in Korea. (AC ¶6). Despite that popularity, the copyrighted works were programmed into the karaoke machines. Whether the songs were so popular that the moving defendants should have known the works were potentially copyrighted at least suggests reckless disregard.

18

(DBr at 23-24).

"While Rule 12(b)(6) addresses the legal sufficiency of the pleading, Rule 12(e) allows a defendant to request clarification of an ambiguous pleading so that it can prepare a meaningful response." *In re APF Co.*, 274 B.R. 408, 425 (Bankr. D. Del. 2001). A motion for a more definite statement under Rule 12(e) is only proper when a complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Rule 12(e) "motion shall point out the defects complained of and the details desired." *Id.*

"The prevailing standard employed by Third Circuit courts is to grant a Rule 12(e) motion 'when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'" *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736-37 (D.N.J. 2008) (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003)). In other words, the function of Rule 12(e) is not "to provide greater particularization of information alleged in the complaint," but to address an unintelligible complaint. *Id.* at 737.

Courts in this district have dismissed complaints when the contain improper "group pleading." This type of pleading fails to satisfy Rule 8 "because it does not place Defendants on notice of the claims against each of them." *Sheeran v. Blyth Shipholding S.A.*, 2015 U.S. Dist. LEXIS 168019, at *8 (D.N.J. Dec. 16, 2015) (citing *Ingris v. Borough of Caldwell*, 2015 WL 3613499, at *5 (D.N.J. June 9, 2015) ("[T]o the extent Plaintiff seeks to lump several defendants together without setting forth what each particular defendant is alleged to have done, he has engaged in impermissibly vague group pleading.")). "Alleging that 'Defendants' undertook certain illegal acts — without more — injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Japhet v. Francis E. Parker Mem'l Home, Inc.*, 2014 U.S. Dist. LEXIS 105134, at *7 (D.N.J. July 31, 2014).

19

Such concerns are not implicated here. The complaint does not sink to the level of unintelligibly that would warrant a more definite statement. The defendants in this case are accused of the same conduct — using and providing karaoke machines in their respective establishments that have been programmed with the copyrighted works without obtaining a license. The moving defendants' specific factual requests read more like discovery notices than legitimate requests for clarification of the allegations. They pose factual issues that can be properly explored in discovery. *See Karaoke City*, 2019 U.S. Dist. LEXIS 68883, at *18 ("To the extent Defendants seek additional details regarding Plaintiff's ownership of the copyrights or other relevant facts, '[s]uch problems are appropriately resolved by discovery, not by an order.'" (quoting *Home & Nature, Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260, 267 (E.D.N.Y. 2004)); *see also Flower Karaoke*, 2019 U.S. Dist. LEXIS 64133, at *16 ("all defendants have to do to figure out how to respond to this complaint is compare their karaoke song books to the table of contents from [Jae Ho]'s book and they will then know.").

The complaint, particularly in light of the plaintiff's *pro se* status, meets the pleading requirements of Rule 8, and adequately apprises the defendants of the allegations against them. Accordingly, the moving defendants' motion for a more definite statement is denied.

### IV. Conclusion

For the reasons stated above, the moving defendants' motion to dismiss the complaint (DE 25) is denied.

An appropriate order follows.

Dated: June 19, 2019

*Kevin McNulty*

**Kevin McNulty**
**United States District Judge**